## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In the Matter of the Application of Mohd Najib | : | |
| Bin Abd Razak, Petitioner, for an Order | : | |
| Pursuant to 28 U.S.C. § 1782 to Take Discovery, | : | |
| Pursuant to the Federal Rules of Civil Procedure, from | : | No. _____ |
| Timothy Leissner and The Goldman Sachs Group, Inc., | : | |
| Respondents. | : | |

## EX PARTE APPLICATION FOR DISCOVERY
## IN AID OF FOREIGN LITIGATION PURSUANT TO 28 U.S.C. § 1782

1.     Petitioner Mohd Najib Bin Abd Razak is the former Prime Minister of Malaysia.

He applies *ex parte* for an order pursuant to 28 U.S.C. § 1782 authorizing his attorneys to issue

subpoenas, pursuant to Federal Rule of Civil Procedure 45, upon Respondents The Goldman Sachs

Group, Inc. ("Goldman Sachs," and together with its wholly owned subsidiaries and affiliated

entities, "Goldman") and Timothy Leissner ("Mr. Leissner" or "Leissner") to produce documents

and provide testimony for use by Petitioner in defending a criminal prosecution brought against

him by the government of Malaysia (the "Malaysian Proceeding").

2.     Between 2009 and 2015, Goldman, Mr. Leissner, and others conspired to divert

billions of dollars from 1 Malaysia Development Berhad ("1MDB"), the Malaysian sovereign

wealth fund, and paid kickbacks and bribes to 1MDB officials to ensure that various illegal

transactions were either improperly approved or went unnoticed. *See United States v. The Goldman

Sachs Grp., Inc.*, 20-CR-437 (MKB) (E.D.N.Y.), Information at Dkt. # 7 ("Goldman Sachs

Information"); *United States v. Leissner*, No. 18-CR-439 (MKB) (E.D.N.Y.), Information at Dkt.

#16 ("Leissner Information").[1]

---

[1] The United States Department of Justice also filed a nearly identical criminal information against Goldman Sachs'
wholly owned Malaysian-based subsidiary and agent, Goldman Sachs (Malaysia) Sdn. Bnd. ("Goldman Malaysia").
*United States v. Goldman Sachs (Malaysia) Sdn. Bnd.*, 20-CR-438 (MKB) (E.D.N.Y.), Information at Dkt # 7 ("GS
Malaysia Information"). For brevity and because they are all publicly accessible on PACER, Petitioner has not filed

3.      After the United States Department of Justice brought criminal charges against Mr. Leissner in 2018, he pleaded guilty to charges of conspiring to violate the Foreign Corrupt Practices Act ("FCPA") and conspiring to commit money laundering. *United States v. Leissner*, No. 18-CR-439 (MKB) (E.D.N.Y.), Plea Tr. at Dkt. # 47 ("Leissner Plea Tr."). All that remains in Mr. Leissner's case is his sentencing. Two other alleged members of the conspiracy, Low Taek Jho, also known as "Jho Low," and Ng Chong Hwa, also known as "Roger Ng," have a criminal matter pending against them in the United States. *See United States v. Jho, et al.*, No. 18-CR-538 (MKB) (E.D.N.Y.).

4.      In mid-October 2020, the DOJ also criminally charged Goldman Sachs and its wholly owned subsidiary, Goldman Malaysia, for conspiring to violate the FCPA. Goldman Malaysia pleaded guilty to the charge, while Goldman Sachs entered into a Deferred Prosecution Agreement with the DOJ. *See* U.S. Department of Justice Press Release, *Goldman Sachs Charged in Foreign Bribery Case & Agrees to Pay Over $2.9 Billion* (Oct. 22, 2020) ("DOJ Announcement"), https://www.justice.gov/opa/pr/goldman-sachs-charged-foreign-bribery-case-and-agrees-pay-over-29-billion.

5.      In the Malaysian Proceeding, Petitioner is alleged to have received funds that were illegally diverted from 1MDB. The Malaysian prosecutor has called and will continue to call former 1MDB officials (the "1MDB Officials") to testify against Petitioner. Petitioner possesses a well-founded belief that the 1MDB Officials were involved in the scheme to defraud 1MDB (the "1MDB Scheme"), received kickbacks and bribes for their roles, and are now falsely inculpating Petitioner to avoid responsibility for their own criminal or otherwise wrongful conduct.

---

all of the various documents from the various United States criminal proceedings with this petition. However, should the Court require copies of these documents, Petitioner will file them with the Court.

6.     Facts established in the criminal proceedings against Mr. Leissner and Goldman Sachs indicate that they are likely to have evidence that demonstrates the 1MDB Officials' knowledge of, involvement in, and receipt of payments from the 1MDB Scheme. Such evidence would similarly significantly impair the 1MDB Officials' credibility as witnesses, which would materially benefit Petitioner's defense. Indeed, the Information and Deferred Prosecution Agreement filed in the Goldman Sachs case repeatedly reference relevant documents that Goldman Sachs has in its possession and produced to the DOJ. *See* Goldman Sachs Information ¶ 48; *United States v. The Goldman Sachs Grp., Inc.*, 20-CR-437 (MBK) (E.D.N.Y.), Deferred Prosecution Agreement ("DPA") ¶ 4(b), https://www.justice.gov/criminal-fraud/file/1329926/download.

7.     Similarly, facts established in the criminal proceedings against Goldman Sachs, Goldman Malaysia, and Messrs. Leissner, Ng, and Low indicate that Goldman Sachs and Mr. Leissner are likely to possess evidence that demonstrates the 1MDB Officials' knowledge of, involvement in, and receipt of payments from the 1MDB Scheme. Such evidence would significantly impair the 1MDB Officials' credibility as witnesses, which would materially benefit Petitioner's defense. Petitioner has asserted that he never communicated with Mr. Leissner or anyone else at Goldman about the 1MDB Scheme, so Mr. Leissner never confirmed with Petitioner that individuals who claimed to be acting in furtherance of the scheme, purportedly pursuant to Petitioner's instructions, had actually received such instructions from Petitioner. Declaration of Muhammad Shafee Bin Md. Abdullah ("Shafee Decl.") ¶ 16, annexed as Exhibit A; *see generally* Leissner and Goldman Sachs Informations (lacking any allegation that Petitioner communicated with Leissner about the scheme). Mr. Leissner's documents and testimony will corroborate Petitioner's assertion.

8.      Finally, Mr. Leissner and his co-conspirators took many steps to shroud the money trail. This effort spanned continents and multiple jurisdictions, included the deployment of an array of shell companies, and involved numerous individuals. Accordingly, Petitioner was misled about the origins of the monies that went to his account. Instead, he believed that the monies received by him were political donations by the late King Abdullah of Saudi Arabia. *See id*.

9.      Petitioner seeks to depose a corporate representative of Goldman Sachs and Mr. Leissner, and obtain documents from both, because of their unique knowledge about the identity of the participants in the conspiracy, the flow of funds throughout the world, and their likely possession of documentary records concerning the conduct of the conspiracy and the flow of funds originating, inter alia, from fees Goldman Sachs earned in connection with transactions conducted with 1MDB.

10.     The Informations filed in the criminal cases against Goldman Sachs, Goldman Malaysia, and Mr. Leissner repeatedly refer to payments to Malaysian government officials and 1MDB officials through shell companies controlled by Mr. Leissner and various co-conspirators. However, the names of these officials, the co-conspirators, and the shell companies are not publicly available. The anticipated identification of those shell companies, co-conspirators, and individual officials through depositions of Mr. Leissner and a corporate representative of Goldman Sachs, along with the production of documents, will allow Petitioner to conduct additional targeted discovery concerning the participants in the conspiracy and "follow" the money. The end of that process will demonstrate Petitioner's innocence, namely that he did not knowingly accept any kickbacks, bribes, or improper payments.

## JURISDICTION AND VENUE

11.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as the application arises under federal law—specifically 28 U.S.C. § 1782. *See, e.g., United Co. Rusal PLC v. Trafigura A.G.*, 2011 WL 1045532 (D. Conn. Mar. 16, 2011).

12.    Venue is appropriate in this District under 28 U.S.C. § 1782, which empowers a district court in "the district in which a person resides or is found" to order discovery, as Goldman Sachs is headquartered at 200 West Street, New York, New York 10282. Goldman Sachs Information ¶ 1. For the same reason, venue is similarly proper under 28 U.S.C. § 1391(b)(1), which allows for venue in any District where a defendant resides.

13.    Venue also is appropriate in this District as it relates to Mr. Leissner. Upon information and belief, Mr. Leissner either resides, or is found, in this District. First, his bail conditions require him to reside in either New York, New York, or Long Island, New York. *See United States v. Leissner*, 18-CR-439 (MKB) (E.D.N.Y.) at Dkt. # 7-1. Second, Mr. Leissner's wife is a celebrity and their relationship is sometimes reported on by the press. A press report stated that Mr. Leissner was spotted in New York City just before restrictive measures relating to the COVID-19 pandemic went into effect.[2] Third, based on public records, Mr. Leissner's last known address is in this District.

## FACTUAL BACKGROUND

14.    Petitioner is a politician in Malaysia who has held various senior positions in the Malaysian government since 1976. Between 2009 and 2018, Petitioner served as the Prime Minister of Malaysia. Petitioner remains a member of parliament, having won his seat in the 2018 elections. Shafee Decl. ¶ 6.

---

[2] *See* https://www.yourtango.com/2020331401/tim-leissner-cheating-kimora-lee-simmons

15.    1MDB was a strategic investment and development company formed in 2009 that was wholly owned and controlled by Malaysia for the purpose of pursuing investment and development projects for the economic benefit of Malaysia and its people. *See* Leissner Information ¶ 4; Goldman Sachs Information ¶ 7.

16.    Respondent Goldman Sachs is a global investment banking, securities, and investment management firm that is incorporated in Delaware and headquartered in New York, New York. Goldman Sachs' international operations are conducted largely through various wholly owned subsidiaries and affiliated entities. Goldman Sachs Information ¶ 1.

17.    Respondent Tim Leissner was an employee of one or more subsidiaries of Goldman, including Goldman Sachs, from 1998 until early 2016. During the relevant time period, he was the Southeast Asia Chairman and a Participating Managing Director at Goldman Sachs. *See* Leissner Information ¶ 1; Leissner Plea Tr. pp. 36-37; Goldman Sachs Information ¶ 4.

18.    Ng Chong Hwa, also known as Roger Ng, was an employee of one or more subsidiaries of Goldman between 2005 and 2014, including Goldman Sachs, and had the title of Managing Director. Ng Indictment ¶ 2; Leissner Information ¶ 8; Goldman Sachs Information ¶ 5.[3] Low Taek Jho, also known as Jho Low, during the material times at issue was a Malaysian national and leader of the conspiracy to defraud 1MDB, and who served as the intermediary with various Malaysian government and1MDB officials. Ng Indictment ¶ 1; Leissner Information ¶ 7; Goldman Sachs Indictment ¶¶ 32, 36. Mr. Low's whereabouts are currently unknown.

19.    Between 2009 and 2015, Goldman Sachs, including through Leissner, assisted 1MDB in raising funds for its use in investment and development projects. Goldman Sachs

---

[3] The Ng Indictment is located at *United States v. Jho*, et al., No. 18-CR-538 (E.D.N.Y.), at Dkt. #1.

Information ¶ 24; *see also* Leissner Information ¶¶ 17-20. Mr. Leissner was Goldman Sachs' point person in the relationship. Leissner Information ¶¶ 17-20*; see also* Ng Indictment ¶¶ 16-24.

20.    Between 2012 and 2014, Goldman Sachs assisted 1MDB with three bond offerings that raised approximately US $6.5 billion for 1MDB. Goldman Sachs Information ¶¶ 33-65. The proceeds of these bond offerings were supposed to be used for the benefit of the Malaysian people. Goldman Sachs Information ¶ 24; Leissner Information ¶¶ 17-20. Pursuant to Goldman's internal accounting controls, each 1MDB bond transaction needed appropriate authorization from Goldman management.  Goldman Sachs Information ¶ 26.  And because Goldman was the initial purchaser of each of the three 1MDB bonds, the transactions required not only proper authorization but accurate reporting.  *Id.*  However, Mr. Leissner, Mr. Ng, and Mr. Low engaged in a scheme to have at least US $2.7 billion of those proceeds directed to the bank accounts of shell companies that they controlled. Leissner Information ¶ 40; Goldman Sachs Information ¶ 65. Mr. Leissner and his co-conspirators then used these funds to enrich themselves and pay kickbacks and bribes to various 1MDB officials and government officials in Abu Dhabi and Malaysia. *See generally* Leissner Information ¶¶ 17-20, 31, 32, 34, 40; *see generally* Goldman Sachs Information ¶¶ 52, 59, 65.  Goldman employees and agents who were responsible for implementing its internal controls failed to do so in connection with the 1MDB bond deals. *Id.* ¶ 26.

21.    Goldman Sachs, including through Mr. Leissner, continued to pursue 1MDB business following the bond deals. For example, in September 2013, Goldman Sachs hosted a "roundtable in New York" for Petitioner that Mr. Leissner attended with other senior Goldman Sachs executives. Goldman Sachs Information ¶ 66.

22.    Eventually the 1MDB Scheme was discovered and a multi-jurisdictional criminal investigation, which included the governments of the United States and Malaysia, commenced. As

a result, the DOJ has obtained nearly US $1.5 billion in civil forfeitures in connection with the investigation, and the bulk of those funds have been returned to the Malaysian government.[4]

23.     In 2016, the Malaysian government cleared Petitioner of any wrongdoing in connection with the 1MDB scandal. Shafee Decl. ¶ 11. Petitioner was subsequently replaced as Prime Minister in 2018 after his ruling coalition, which consists of the United Malays National Organization (UMNO), a political party over which the Petitioner presided, lost parliamentary elections. *Id.* ¶ 12. Under the control of a new political party, Malaysia switched course and brought actions asserting criminal charges against Petitioner. *Id.*.

24.     In an action against Petitioner, captioned *Kuala Lumpur High Court Case No. WA-45-7-11/2018 & WA-45-8-11/2018*, Petitioner has been charged with twenty-one counts of money laundering and four counts of abuse of position for gratification (previously referred to as the "Malaysian Proceeding"). *See generally* Shafee Decl. ¶ 13. Apart from the ongoing Malaysian Proceeding, on July 28, 2020, Petitioner was convicted on charges of abuse of power, money laundering and breach of trust relating to different actions in connection with 1MDB. However, Petitioner maintains his innocence in that action and has appealed his conviction and accompanying sentence. The appeal is pending. *Id.*

25.     The Malaysian Proceeding is currently being tried, and trial proceedings are expected to last until the end of 2021. *Id.* Petitioner has consistently maintained his innocence in the Malaysian Proceeding. He has asserted that he was unaware of any bribes or kickbacks. In relation to the funds that turned out to be suspect which were received by the Petitioner, it is

---

[4]*See, e.g.*, https://my.usembassy.gov/u-s-returns-more-than-rm800-mil-recovered-1mdb-050719/; https://www.straitstimes.com/world/united-states/us-returns-another-us300-million-of-recovered-1mdb-funds-to-malaysia; DPA ¶ 1. Goldman Sachs has also paid hundreds of millions of dollars in penalties to resolve investigations by civil and criminal foreign authorities. *Id.* ¶ 4(k).

Petitioner's position that he was misled about their origins, and he believed that the monies received by him were donations by the late King Abdullah of Saudi Arabia. *Id.* ¶ 16.

26.    The Malaysian prosecutor has called and will continue to call a number of former 1MDB officials to testify against Petitioner (previously referred to as the "1MDB Officials"). The first is Shahrol Azral Bin Ibrahim Halmi ("Shahrol"), who served as the Chief Executive Officer of 1MDB from 2009 to 2013 and a director of 1MDB and its subsidiaries. *Id.* ¶ 17. Shahrol has testified that he approved transactions that later turned out to be part of the fraudulent scheme without disclosing full details of the transactions to the 1MDB Board of Directors. *Id.*

27.    Petitioner plans to impeach Shahrol's credibility and testimony by showing that he in fact engaged in such flagrantly improper conduct (executing these transactions without Board approval) not because he thought Petitioner was instructing him to do so, but rather because Shahrol was receiving kickbacks and bribes. Petitioner believes that the discovery sought from Mr. Leissner and Goldman Sachs will assist him in impeaching Shahrol in this manner. Petitioner expects that Mr. Leissner would testify, or provide documents showing, that Shahrol received kickbacks and bribes, contrary to his testimony in Malaysia to date. Petitioner similarly expects that Goldman Sachs is likely to possess documents showing that various 1MDB officials, including Shahrol, received kickbacks and bribes, contrary to his testimony in Malaysia to date.

28.    Second, the Malaysian prosecutor has called Mohammad Hazem Bin Abdul Rahman ("Hazem"), who served as the Chief Operating Officer of 1MDB from 2012 to 2013, Chief Executive Officer of 1MDB from 2013 to 2015, and a director of 1MDB and its subsidiaries. *Id.* During that time, Hazem approved transactions and payments wherein billions of dollars were diverted from 1MDB. Hazem has already testified in Malaysia that he approved transactions that later turned out to be part of the fraudulent scheme. *Id*. Again, Petitioner asserts upon information

and belief that Hazem himself was being paid kickbacks and bribes, and that his testimony is an attempt to wrongly shift blame for his own misdeeds to Petitioner. Petitioner believes that the discovery sought by Petitioner will provide evidence that Hazem received bribes and kickbacks, which Petitioner can use to discredit Hazem's testimony. Petitioner similarly expects that Goldman Sachs is likely to possess documents showing that various 1MDB officials, including Hazem, received kickbacks and bribes, contrary to his testimony in Malaysia to date.

29.     Third, the Malaysian prosecutor is planning on calling Azmi bin Tahir ("Azmi") in the pending trial. Between June 2012 and December 2017, Azmi served as the Chief Financial Officer of 1MDB. *Id*. ¶ 18. He was also a director of certain 1MDB subsidiaries. *Id*. Based on a proposed witness statement that Petitioner understands the Malaysian prosecutor will attempt to tender, Petitioner believes Azmi would offer testimony similar to that of Hazem and Shahrol. *Id.*

30.     In addition, based on the allegations in *United States v. All Funds & Assets Including Securities and Investments, on Deposit in Falcon Private Bank Limited Account Numbers '6001 and '6001.1001*, No. 2:20-cv-5914 (C.D. Cal.) ("*All Funds*"), it appears Azmi approved the transfer of billions of dollars belonging to 1MDB without board approval and otherwise misled the 1MDB board about the source and use of such funds. *See All Funds*, Compl. at ¶¶ 145, 438-464, at Dkt. # 1. Petitioner believes that Azmi is a participant in the conspiracy and a recipient of bribes and kickbacks and that he will try to deflect blame to Petitioner. Shafee Decl. ¶ 22. Petitioner also believes that the requested discovery from Mr. Leissner will help him locate proof that Azmi did in fact receive bribes and kickbacks, which Petitioner can use to discredit Azmi's testimony against him. Petitioner similarly expects that Goldman Sachs is likely to possess documents showing that various 1MDB officials, including Azmi, received kickbacks and bribes.

31.     Petitioner asserts upon information and belief that the testimony and documents of Mr. Leissner and Goldman Sachs will also demonstrate that Petitioner did not instruct, encourage, authorize, or endorse the payment of any bribes or kickbacks to himself or others. They will further show that Mr. Leissner, Goldman Sachs, and others never verified with Petitioner that Mr. Low was acting on Petitioner's behalf, even though it was manifestly obvious that Mr. Low's purported instructions were illegal.

32.     Potential conduits for funneling money to the conspiracy's participants were offshore bank accounts held in the names of shell companies. Petitioner believes that Mr. Leissner is likely to possess information about these shell companies that is relevant to Petitioner's defense.

33.     It is critical to Petitioner's defense of the significant criminal charges against him that he obtain sufficient evidence to test the credibility of the witnesses against him; to learn information about other entities and individuals who were involved in the alleged conspiracy, and to obtain exculpatory testimony that Petitioner never instructed Mr. Leissner, Goldman Sachs, or their co-conspirators to engage in criminal behavior. Petitioner's need for this information to bolster and anchor his defenses in the Malaysian Proceeding drives and underlies this Petition.

## DISCOVERY REQUESTED

34.     Petitioner seeks documentary discovery relating to, *inter alia*, (1) any purported instructions to have money transferred to him or for the benefit of himself or his family, whether such instructions were made directly or indirectly; (2) any involvement by, or knowledge of, the conspiracy by the 1MDB Officials discussed above and/or referenced in the Goldman Sachs, Goldman Malaysia, or Leissner Informations; (3) the flow of funds used to pay any kickbacks or bribes to 1MDB Officials and Malaysian government officials; and (4) each of the bribes or

kickbacks paid to the 1MDB Officials and Malaysian government officials. *See* Subpoenas for Timothy Leissner and The Goldman Sachs Group, Inc., annexed as Exhibits B and C, respectively.

35.     Petitioner further seeks initial depositions of a corporate representative of Goldman Sachs and Mr. Leissner. At those depositions, Petitioner plans to ask Goldman Sachs' corporate representative and Mr. Leissner, *inter alia*, (1) to confirm that neither Mr. Leissner nor other Goldman Sachs personnel were ever instructed by Petitioner to participate in any misconduct relating to 1MDB, or anything else; (2) to confirm that Mr. Leissner never verified any of Mr. Low's representations about Petitioner to Mr. Leissner; (3) to explain the roles that Shahrol, Hazem, Azmi, and other 1MDB officials played in the conspiracy, and to confirm that they received kickbacks and bribes; (4) to identify the Malaysian government officials who received bribes and kickbacks; and (5) to identify all of the shell companies and participants that were involved in the conspiracy, including the unidentified individuals and entities referenced in the Goldman Sachs and  Goldman Malaysia Informations and Guilty Plea/Deferred Prosecution Agreements, the Leissner Information, and the Ng/Low Indictment. Petitioner believes that this testimony will allow him to identify additional material individuals and entities to subpoena in the United States, and potentially in other countries.

### *EX PARTE* RELIEF IS APPROPRIATE

36.     Discovery sought pursuant to 28 U.S.C. § 1782 may be authorized on an *ex parte* basis. *See, e.g.*, *Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. July 3, 2012) ("[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*."); *In re Hornbeam Corp.*, No. 17-658-CV, 2018 WL 416486, at *2 (2d Cir. Jan. 16, 2018) (same); *see also In re O'Keefe*, 650 F. App'x 83, 85 (2d Cir. May 26, 2016) (rejecting the argument that it was improper to bring application *ex parte*). If the subpoena is issued, Goldman Sachs and

Mr. Leissner will have the opportunity to object and/or to move to quash the subpoena. *Gushlak*, 486 F. App'x at 217 (citing Fed. R. Civ. P. 45(c)(3)). Therefore, *ex parte* relief is justified.

## THE SECTION 1782 STATUTORY REQUIREMENTS HAVE BEEN MET

37.     Section 1782 authorizes this Court to order any person in the Southern District of New York to give testimony or produce documents for use in a foreign proceeding, upon the application of any person with an interest in that proceeding. Specifically, Section 1782(a) provides, in relevant part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced . . . To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

38.     "Section 1782 applicants must meet certain statutory requirements:  (1) the person from whom discovery is sought must reside or be found in the district in which the application was made, (2) the discovery must be for use in a foreign proceeding before a foreign tribunal, and (3) the applicant must be either a foreign tribunal or an interested person." *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 128 (2d Cir. 2017) (quotations omitted). Petitioner satisfies each of these requirements.

39.     *First*, Goldman Sachs "resides" in this District because it is headquartered here. *See, e.g., In re Kolomoisky*, No. M19-116, 20-6 WL 2494332, at *1 (S.D.N.Y. Aug. 18, 2006). Furthermore, as previously alleged, Mr. Leissner is believed to reside in this District or Long Island. Specifically, his bond conditions require him to remain in this District, his last known address is in this District, and press reports have stated that Mr. Leissner is in New York City.

Upon information and belief, the documents that Petitioner seeks from Goldman Sachs and Mr. Leissner are either located in this District or are within the possession, custody, or control, as those terms are defined in Federal Rule of Civil Procedure 34, of Goldman Sachs and/or Mr. Leissner.

40.     *Second*, the requirement that the discovery sought is for use in a foreign proceeding before a foreign tribunal is satisfied. The Malaysian Proceeding is pending in the Kuala Lumpur High Court, which qualifies as a foreign tribunal. A foreign criminal action satisfies the statutory requirement that there is a foreign proceeding. *See, e.g., In re Vinmar Overseas, Ltd*., 2020 WL 4676652, at *1 (S.D.N.Y. Aug. 12, 2020) (criminal investigations in a foreign country satisfied this requirement); *In re Rodriguez Guillen*, 2020 WL 3497002, at *2 (S.D.N.Y. Jun. 29, 2020) (foreign proceedings included a criminal complaint that had initiated legal proceedings and an investigation); *In re Mangouras*, 2017 WL 4990655, at *5 (S.D.N.Y. Oct. 30, 2017) (discovery which sought to challenge a foreign criminal conviction satisfied the foreign proceeding requirement).

41.     To establish that the discovery is for "use" in a criminal proceeding, the applicant must "establish that he or she has the practical ability to inject the requested information into a foreign proceeding." *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 132 (2d Cir. 2017). "[T]he term 'for use' in Section 1782 has only its ordinary meaning—that the requested discovery is 'something that will be employed with some advantage or serve some use in the proceeding.'" *Id.* "[D]iscovery sought pursuant to § 1782 need not be necessary for the party to prevail in the foreign proceeding in order to satisfy the statute's 'for use' requirement." *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015). Petitioner easily satisfies this standard. He is the defendant in the Malaysian Proceeding, and is legally permitted to submit evidence in support of his defense, or use it to impeach witnesses who testify against him. Shafee Decl. ¶¶ 5, 25–32.

42.    *Third*, Petitioner is an interested person within the meaning of the statute because he is the criminal defendant in the Malaysian Proceeding. *See, e.g., Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*, 785 F. Supp. 2d 434, 438 (S.D.N.Y. 2011) ("No doubt litigants are included among . . . the interested persons who may invoke § 1782" (quoting *Intel Corp. vs. Advanced Microdevices Inc.*, 542 U.S. 241, 256 (2004)).

43.    Accordingly, Petitioner meets each of the statutory requirements set forth in Section 1782.

## THE COURT SHOULD EXERCISE ITS DISCRETION AND PERMIT PETITIONER TO OBTAIN THE REQUESTED DISCOVERY

44.    Once the three statutory factors are satisfied, the district court should determine, in its discretion, whether to order the requested discovery. *See Intel*, 542 U.S. at 264.

45.    In *Intel*, the Supreme Court enunciated four factors that a district court could consider in determining when or to what extent discovery is permissible under Section 1782. The four factors are:  (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding" such that the "foreign tribunal has jurisdiction over [it];" (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court juridical assistance;" (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States;" and (4) whether the requests are "unduly intrusive or burdensome" and if so, whether those requests can be "trimmed." *Id.* at 264-65; *see also Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015).

46.    In addition to these factors, the Court should also consider the overarching principles embodied in Section 1782. "Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in

foreign tribunals." *Intel*, 542 U.S. at 247. While the legislation has undergone several amendments, these amendments have consistently provided more, not less, discovery for use in more, not fewer, judicial and quasi-judicial fora, in connection with more, not fewer, types of proceedings. *See id.* at 248-49. As the Seventh Circuit has explained, "a party to litigation in a foreign country can seek discovery relating to that litigation in a federal district court, and, in the discretion of that court, can obtain as much discovery as it could if the lawsuit had been brought in that court rather than abroad." *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 594 (7th Cir. 2011) (internal citations omitted).

47.     Section 1782 has two aims that guide the district court's discretion:  "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts[.]" *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 83 (2d Cir. 2004) (quotation omitted).

48.     To that end, "Congress intended . . . that 28 U.S.C. § 1782 would provide an avenue for judicial assistance to foreign or international tribunals whether or not reciprocal arrangements existed. . . . . [Section 1782] is a one-way street." *Application of Malev Hungarian Airlines*, 964 F.2d 97, 101 (2d Cir. 1992) (quotation omitted). "Absent specific directions to the contrary from a foreign forum, the statute's underlying policy should generally prompt district courts to provide some form of discovery assistance." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1102 (2d Cir. 1995). Indeed, if a court fails to consider this backdrop, it risks abusing its discretion. *Malev*, 964 F.2d at 101-02.

49.     Applying these factors and considering the overarching principles behind the statute, this Court should permit Petitioner to obtain the requested discovery.

**Respondents Mr. Leissner and Goldman Sachs Are Not Parties
to the Malaysian Proceedings Pending Against Petitioner**

50.    The first *Intel* factor considers whether the respondent is a participant in the foreign proceeding because when a respondent is a party, "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when the evidence is sought from a nonparticipant in the matter arising abroad." *Intel*, 542 U.S. at 264.

51.    While the Malaysian government has filed criminal charges against Mr. Leissner, neither he nor Goldman Sachs is a party to the proceedings currently pending against Petitioner. Shafee Decl. ¶ 24.[5] Mr. Leissner is also currently in the United States, will remain in the United States for the foreseeable future (the sentencing guidelines range discussed at his plea hearing was life imprisonment), and is unlikely to be available to be called as a witness in the Malaysian Proceeding. Leissner Plea Tr. at pp. 30-31. As the *Intel* Court explained, this fact conclusively demonstrates why Petitioner needs Section 1782 aid. *See* 542 U.S. at 264 ("nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid").

52.    As noted above, Goldman Sachs and Mr. Leissner possess evidence relevant to Petitioner's claims:   they possess significant knowledge and documentation about the flow of funds to 1MDB officials and to Malaysian government officials. While the evidence is crucial to Petitioner's defense in the Malaysian Proceedings, the material sought is not within the foreign tribunal's ready reach because Goldman Sachs is based in New York and, upon information and belief, the relevant information it possesses is found in the United States, beyond the ready reach of Malaysian courts. Similarly, upon information and belief Mr. Leissner is not in Malaysia and, as best as Petitioner can determine, Mr. Leissner will not be travelling or otherwise found there

---

[5] Malaysia has dropped criminal charges against Goldman Sachs. Shafee Decl. ¶ 15.

any time in the near future. This factor weighs in favor of granting the application. *See In re Chevron Corp*., No. 2:10-MC-91, 2010 WL 9014422, at *4 (D. Vt. Dec. 2, 2010).

## The Malaysian Court Will Be Receptive to the Discovery

53.    The second *Intel* factor considers the nature of the foreign tribunal and its receptiveness to the requested discovery. This factor weighs in favor of granting the petition unless there is authoritative proof that a foreign tribunal would reject evidence obtained through a Section 1782 proceeding. *See Minatec Fin. S.A.R.L. v. SI Grp. Inc*., 2008 WL 3884374, at *6-7 (N.D.N.Y. Aug. 18, 2008) (granting discovery request in absence of "neither any rejection nor offense taken by the German tribunals" to the discovery and finding this factor favors petitioner); *cf. In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*, 2006 WL 3844464, at *6 (S.D.N.Y. Dec. 29, 2006) ("[P]roof resting on equivocal interpretations of foreign policy or law generally provides an insufficient basis to deny discovery"). There is no such proof in this case.

54.    Malaysia's legal system is modeled upon the English legal system and adheres to the common law. As in the United States judicial system, Malaysian courts provide criminal defendants with the opportunity to submit evidence in favor of their case, such as pursuant to Sections 179(2) and 181 of the Malaysian Criminal Procedure Code ("CPC"). Shafee Decl. ¶¶ 26–27. So long as the evidence is otherwise admissible, Malaysian courts are receptive to receiving it by virtue of the Malaysian Evidence Act of 1950 (in particular Section 32(1)(c)) and also Section 52 of Malaysian Anti-Corruption Commission Act 2009. *Id.* ¶¶ 27, 29, 32.

55.    Moreover, Malaysian courts are not inherently hostile to documents originating outside of Malaysia. Indeed, Malaysia has multiple statutes allowing for the automatic admission of foreign evidence in certain circumstances, such as when it has been requested by the Malaysian Government. These statutes include Malaysia's Evidence Act (in particular Section 90E), Mutual

Assistance in Criminal Matters Act 2002 ("MACMA"), Anti-Corruption Commission Act and the Anti-Money Laundering, Anti-Terrorism Financing and Proceeds of Unlawful Activities Act 2001. *Id.* ¶ 30-32.

56.    Were Goldman Sachs or Mr. Leissner located in Malaysia, Petitioner would be able to subpoena Goldman Sachs and Mr. Leissner for documents and testimony by virtue of Sections 51 of the CPC, and if their statement were recorded pursuant to Section 112 of the CPC; Section 30 of the Anti-Corruption Commission Act; and Section 32 of the Anti-Money Laundering Act. *Id*. ¶ 27. While Section 1782 does not by its terms require the discovery sought thereunder to also be available under the practice of the foreign court, *Intel*, 542 U.S. at 253, the fact that the foreign court provides for similar discovery by those within its jurisdiction demonstrates that it is receptive to the evidence gathered in a Section 1782 proceeding.

57.    Malaysia also maintains a procedural mechanism similar to Section 1782 for the U.S. government to obtain evidence located in Malaysia for use in a U.S. criminal proceeding: MACMA. Also, Section 396 of the CPC provides that where the attendance of a person who is to give evidence cannot be procured without unreasonable delay, the prosecutor may apply to the court of jurisdiction for the production of that person to record and document that person's evidence on oath. Shafee Decl. ¶ 29-31. Quite akin to the United States criminal justice system, the Malaysian criminal justice system provides the fullest latitude for any defendant to discover any evidence, be it oral testimony or documents, under the expansive principles of fair trial guaranteed under Article 5 of the Malaysian Constitution which inter alia, embodies the principles of Equality of Arms, "No property in a witness," and the extension of cooperation in criminal justice to the international comity. Shafee Decl. ¶ 28

58.    Enforcement of this application comports with one of the important congressional purposes behind Section 1782:  that of encouraging reciprocity with other nations. *Schmitz*, 376 F.3d at 84-85. The second *Intel* factor thus weighs in favor of granting Petitioner's application.

### The Request Does Not Conceal an Attempt to Circumvent Foreign Proof-Gathering Restrictions or Other Policies of a Foreign Country or the United States

59.    The third *Intel* factor considers whether the Section 1782 petition is being used to circumvent foreign proof-gathering restrictions, or is otherwise inconsistent with the policies of the foreign country or the United States. *Intel*, 542 U.S. at 264-65. Some courts have interpreted this discretionary factor as an inquiry into the Petitioner's good faith. *Gemeinshcaftspraxis*, 2006 WL 3844464, at *7. Petitioner's request here is made in good faith and not for purposes of harassment. *See Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 81 (2d Cir. 2012).

60.    Goldman Sachs and Mr. Leissner are outside the jurisdictional reach of Malaysian courts, and U.S. judicial assistance is required to discover materials essential to Petitioner's defense. Parallel U.S. and Malaysian policies encourage reciprocity regarding foreign proof-gathering. The evidence sought here is likely to aid in Petitioner's defense of the criminal charges against him. Evidence showing that the witnesses against him participated in and benefited from the conspiracy is likely to damage their credibility. Evidence that Mr. Leissner and the other co-conspirators did not take any instructions whatsoever from Petitioner, or verify that Mr. Low's representations about Petitioner's approval of the scheme were accurate, is likely to support his defense that he did not participate in bribery, money laundering, or public corruption.

61.    Malaysia is receptive to this type of Section 1782 discovery and would allow such discovery through its own courts if Goldman Sachs' corporate representative and/or Mr. Leissner were in Malaysia, as provided under Sections 51 of the CPC and if their statement were recorded pursuant to Section 112 of the CPC, Section 30 of the Anti-Corruption Commission Act, and

20

Section 32 of the Anti-Money Laundering Act 2001. Shafee Decl. ¶ 27. Petitioner will not face any barriers to using the information discovered in this proceeding in the Malaysian Proceeding by virtue of Section 32(1)(c) of the Evidence Act. *Id.* ¶ 28.

62.    Gathering this information is also consistent with core principles of the United States justice system. As the Supreme Court has stated, "[w]hether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). This right includes the disclosure of exculpatory and impeachment evidence by the government. *See, e.g., Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972).

63.    Defendants' rights in the United States also include the ability to subpoena witnesses to produce documents and provide testimony at a trial or a hearing. *See, e.g.*, Fed. R. Crim. P. 17. The Federal Rules of Criminal Procedure further allow for the deposition of a witness and the production of documents to preserve a witness' testimony for trial, including, analogous to Petition's position in Malaysia seeking information from a witness in the United States, a witness who may be located outside the United States. *See* Fed R. Crim P. 15.

64.    Moreover, a defendant's *Brady* rights extend beyond the prosecutor's office. Justice Manual, Criminal Resource Manual at 165 (instructing that "in complex cases that involve parallel proceedings with regulatory agencies (SEC, FDIC, EPA, etc.), or other non-criminal investigative or intelligence agencies, the prosecutor should consider whether the relationship with the other agency is close enough to make it part of the prosecution team for discovery purposes").

65.    Whether foreign criminal investigative or intelligence agencies constitute the "prosecution team" for *Brady* purposes is an open question in this Circuit. However, it is worth

noting here that the DOJ's investigation of the 1MDB Scheme was conducted at the very least in parallel with investigations conducted by other foreign entities, including the Attorney General's Chambers of Malaysia, the Royal Malaysian Police, and the Malaysian Anti-Corruption Commission. *See* DOJ Announcement. Moreover, the DPA (and Plea Agreement) require Goldman Sachs (and Goldman Malaysia) to "cooperate fully with other domestic or foreign law enforcement and regulatory authorities and agencies[.]" DPA ¶ 5.

66.     Presumably, the plea agreement between the DOJ and Mr. Leissner imposes a commensurate obligation to cooperate with foreign governments. It would undercut notions of fundamental fairness if Petitioner was denied access to the same information—exculpatory or inculpatory that Malaysian authorities potentially have, particularly information originally obtained in the United States.

67.     Finally, the Malaysian people have a manifest interest in Petitioner receiving as fair and comprehensive a trial as possible. Petitioner was Prime Minister for a decade and is still a member of Malaysia's Parliament. He is also alleged to have participated in the most serious kind of corruption and money laundering. He only was charged once his political opponents gained power. Under the circumstances, a trial that is perceived to be unfair could cause significant disruption to Malaysian politics, and sow unrest among the Malaysian people. Allowing the discovery of facts known to key participants in the conspiracy will help mitigate any potential perceptions that the proceeding, whatever the result, was unfair.

68.     In short, the third *Intel* factor favors granting Petitioner's application.

### The Discovery Requests are Appropriately Tailored Considering the Scope of the Malaysian Proceedings

69.     Courts may consider whether the discovery requests under Section 1782 are "unduly intrusive or burdensome" and should be "rejected or trimmed." *Intel*, 542 U.S. at 265.

70.     Petitioner has attempted to tailor his discovery requests as best he can under the circumstances. The criminal proceedings against him relate to a sophisticated money laundering, bribery, and kickback scheme orchestrated by Mr. Leissner and his co-conspirators over the course of more than five years and across multiple jurisdictions. The potential universe of documents related to the scheme is vast. In the criminal proceedings against Mr. Ng and Mr. Low, the U.S. government has provided Mr. Ng with access to over 1.2 million documents. *See* Ng/Low Docket at Dkt. #35. Despite the potential scope of discovery, Petitioner has tried to narrowly tailor his document requests. Petitioner seeks documents demonstrating the flow of money to certain 1MDB officials and Malaysian Government Officials and demonstrating those individuals' involvement in the conspiracy. He also seeks documents demonstrating that he did not communicate with Mr. Leissner directly or otherwise direct him or his co-conspirators to take illegal actions.

71.     Furthermore, Goldman Sachs has ***already*** collected documents in connection with the DOJ's investigation of the 1MDB scheme.  *See* DPA ¶ 4(b) ("[T]he Company received partial credit for its cooperation with the Offices' investigation of the underlying conduct, including collecting and producing voluminous evidence located in other countries [and] making regular factual presentations and investigative updates to the Offices[.]"); *see also* Goldman Sachs Information ¶ 48 ("For example, had Goldman conducted a review of Leissner's electronic communications at the time, it would have discovered multiple messages linking Low to, among others, the bond deal, 1MDB officials, Malaysian Official 1 and Abu Dhabi Official 1 …."). Thus, Goldman Sachs has already performed the legwork to locate, collect, and produce relevant and responsive documents in connection with the investigations into it. Its compliance with this Section 1782 application likely will not require that Goldman Sachs review or locate any new information.

72.    The universe of responsive documents is likely to be relatively small (considering the scope of the conspiracy), thereby not constituting a significant burden. Moreover, if the subpoena is determined to be overly broad, the proper course would be to modify it rather than quash it outright. *See Euromepa*, 51 F.3d at 1101 ("because Section 1782 gives the court complete discretion in prescribing the procedure for parties to follow in producing requested materials, we think that it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright" (quotation and internal citation omitted)). Petitioner stands ready and willing to cooperate with Mr. Leissner and Goldman Sachs if either has any legitimate concerns about the scope of the discovery requests.

73.    The fourth *Intel* factor thus weighs in favor of granting the instant application.

## CONCLUSION

74.    This Court should exercise its discretion in favor of Petitioner, to effectuate the twin aims of 28 U.S.C. § 1782:  (1) "providing efficient means of assistance to participants in international litigation in our federal courts;" and (2) "encouraging foreign countries by example to provide similar means of assistance to our courts." *Schmitz*, 376 F.3d at 84 (quotation omitted).

75.    Considering the parties involved and the type and magnitude of the conduct alleged, the Malaysian Proceeding is a matter of international interest and importance. The United States has already cooperated extensively with the government of Malaysia to return misappropriated funds. If a similarly situated defendant were being charged with a crime here, and there was accessible exculpatory information in a foreign country, it would be in the interest of the American judicial system for that defendant to get access to that foreign-controlled exculpatory material.

This case is the perfect stage for the United States to set an example of providing assistance to foreign courts when the interests of justice so require.

76.     Petitioner respectfully requests that the Court issue an order authorizing Petitioner to initiate discovery and issue subpoenas in substantially the same form as those attached as Exs. B and C.

77.     Mr. Leissner's exact location within this District is not known publicly, which will make serving Mr. Leissner with the subpoena extremely difficult. The Malaysian Proceeding is ongoing and there is some urgency for the need to gather evidence for Mr. Leissner. Certain government officials, including the Probation Department and the United States Attorney's Office of the Eastern District of New York, do know Mr. Leissner's location.

78.     Fed. R. Civ. P. 4(c)(3) allows the Court to require that a United States Marshal be ordered to make service. Considering the circumstances, Petitioner requests that the United States Marshal be ordered to serve the subpoena on Mr. Leissner within 30 days of the order granting this application. Petitioner further requests that either the Probation Departments or the United States Attorney's Offices for the Eastern or Southern Districts of New York be ordered to provide Mr. Leissner's current location to the Marshals Service, so that service can be effectuated. Petitioner understands that the Government likely has an interest in keeping Mr. Leissner's

location outside the public record, and is not requesting that Petitioner be informed of the location, or that the location be made available on the public record.

DATED:        November 17, 2020

                                  Respectfully submitted,

                                    */s/ Kevin T. Carroll*_____
                                    Kevin T. Carroll
                                    John M. Doroghazi
                                    David L. Hall
                                    Paul A. Tuchmann
                                    WIGGIN AND DANA LLP
                                    437 Madison Avenue, 35th Floor
                                    New York, New York 10022
                                    kcarroll@wiggin.com
                                    jdoroghazi@wiggin.com
                                    dhall@wiggin.com
                                    ptuchmann@wiggin.com

                                    Tania Scivetti (*Pro hac vice* motion to be filed)
                                    SCIVETTI AND ASSOCIATES
                                    M-2-20 1st Floor, Plaza Damas
                                    50480 Kuala Lumpur
                                    Malaysia
                                    tania@scivettilegal.com